UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VEOLIA TRANSPORTATION, INC.,

      Plaintiff,

v.                                      Case No. 09-14162
                                          Honorable Patrick J. Duggan

ENJOI TRANSPORTATION, LLC,

      Defendant.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 17, 2010.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

This action arises from a contract to provide "complementary paratransit services" to Detroit metropolitan residents. Plaintiff Veolia Transportation, Inc. ("Veolia"), which contracted with the City of Detroit ("City") to provide these services, claims that the company it subcontracted with to operate and staff Veolia's customer service call center, Defendant Enjoi Transportation, LLC ("Enjoi"), breached the subcontract (Count I), tortiously interfered with Veolia's contract with the City (Count II), and conspired with city employees to tortiously interfere with Veolia's contract with the City (Count III).

Presently before the Court are the following motions: (1) Enjoi's motion for summary "disposition" pursuant to Federal Rule of Civil Procedure 56(c), filed May 12, 2010; (2) Veolia's motion for partial summary judgment with respect to its claim that

Enjoi breached a "no-contact" provision in the parties' contract, filed pursuant to Rule 56

on June 30, 2010; and (3) Veolia's motion to strike Enjoi's supplemental brief filed in

support of Enjoi's summary judgment motion, filed July 22, 2010. The Court held a

hearing with respect to the parties' motions on August 11, 2010. The motions are now

ripe for resolution.

## I.      Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).

The central inquiry is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512

(1986). After adequate time for discovery and upon motion, Rule 56(c) mandates

summary judgment against a party who fails to establish the existence of an element

essential to that party's case and on which that party bears the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the

"nonmoving party must come forward with 'specific facts showing that there is a genuine

issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine

issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.     Factual and Procedural Background

The City, through its Department of Transportation ("DDOT") and with federal government assistance, operates a system of fixed route bus services within the City. Under federal law, all operators of fixed route transit services must provide accessible and useable transportation services to disabled individuals whose disability prevents them from using the fixed route system and whose trips begin and end within a quarter mile of a fixed route.  This service is known as complementary paratransit service ("paratransit service"). DDOT contracts out this service to private transportation providers.

On or about August 29, 2006, the City contracted with ATC Vancom, Inc. ("ATC") to provide paratransit services ("City Contract").  Apparently ATC had been operating the City's paratransit service since 1999.  In December 2006, ATC merged into Veolia and Veolia became the party to the City Contract.[1]

The City Contract provides that, in exchange for an agreed amount of compensation, Veolia would "manage and operate DDOT's ADA complementary

---

[1]For ease, the Court hereafter will refer only to Veolia even though certain actions were taken by ATC before the merger.

paratransit transportation service" for a five-year period.  (Def.'s Mot. Ex. 3.)

Specifically, the City Contract states:

> The Contractor [Veolia] shall provide vehicles and maintenance of these (same) vehicles.  Service includes standing order, regular routine basis trips, and also those of a "demand-response" nature with previous day notification.  The Contractor shall serve as a full-service provider and shall manage all aspects of reservations, scheduling, dispatch and vehicle operations.  The Contractor shall also collect trip information, review the manifest for errors and completeness; and then deliver the manifests to DDOT for editing.

> The Contractor shall be responsible for meeting all requirements as specified in this Contract including, but not limited to, employee standards and training, scheduling and dispatching, safety, fares, on-time performance, reporting, billing, and insurance coverage, any appropriate licensing, and other legal requirements.

(*Id.* Ex. A.)  The City Contract defines the "Service Area" to include the City and certain surrounding suburban communities.  (*Id.*)

Veolia entered into a subcontractor agreement with Enjoi to operate and staff the paratransit customer service call center (Enjoi Contract).[2]  (Def.'s Mot. Ex. 7.)  The purpose of the Enjoi Contract was "to engage Contractor [Enjoi] to assist in the delivery of accessible, cost effective, public transportation to persons certified as eligible in accordance with Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1991."  (*Id.* ¶ 1.)  The Enjoi Contract identifies broadly the services to be provided as follows: "Contractor [Enjoi] shall assist [Veolia] in providing ADA

---

[2]The Enjoi Contract in fact was entered into before the City Contract in preparation for Veolia's bid to the City to provide paratransit service.

paratransit services to qualified individuals in the Detroit Michigan metropolitan area by staffing and operating the customer service call center associated with the provision of said services." (*Id.* ¶ 3.)

As relevant to Veolia's claims in this lawsuit, the Enjoi Contract contains a "no contact" clause which states:

> Contractor shall have no contact with DDOT, the Local Advisory Council, the Task Force on Disabilities and other local transit related entities in connection with the DDOT Contract unless instructed by [Veolia]; shall not make any negative comments to the third parties concerning the Contract, DDOT or [Veolia]; and shall not permit or cause to be permitted any work slowdowns or stoppage by the contracted personnel.

(*Id.* ¶ 3.K.) The Enjoi Contract also contains a "Non-Competition" clause which provides:

> In consideration of this Agreement and the continuation of performance hereunder, Contractor agrees that during the duration of this Agreement, Contractor will not, directly or indirectly, by itself or through any affiliate, firm, person, partnership, corporation, limited liability company, or otherwise, as an investor, shareholder, partner, joint venturer, or agent, within the DDOT service area, provide personnel of the type(s) to be furnished hereunder to any company, partnership, corporation/limited liability company or other person or entity providing paratransit or other services of the types being provided to DDOT by [Veolia] under the DDOT Contract or any extension renewal, enhancement, modifications thereof/there under without prior written approval from [Veolia].

(*Id.* ¶ 11.) The term of the Enjoi Contract was February 1, 2005 through January 31, 2010. (*Id.* ¶ 2.)

Beginning in April 2008, Veolia began having billing disputes with the City with respect to the City Contract. (Def.'s Resp. to Pl.'s Mot. Ex. 6.) Specifically, there was a

dispute regarding the calculation of vehicle service hours. (*Id.*) The City paid the amount claimed by Veolia, but then determined that Veolia was incorrect in its method of calculating those hours under the terms of the City Contract. A meeting between City and Veolia representatives was convened on November 17, 2008. (*Id.* Ex. 4 ¶ 6.) According to LaTrinda Perry, then DDOT's Special Services Project Manager, Veolia threatened at the meeting to terminate its services and continued to make similar threats in the months that followed. (*Id.*)

In the meantime, in late September 2008, Enjoi responded to a DDOT request for bids to provide transportation services under the Transitional Pilot Program ("TPP"). (Pl.'s Mot. Ex. F.) According to Ms. Perry, the TPP program and paratransit program under the ADA have "different purposes, different rider eligibility criteria, and different funding sources." (Def.'s Resp. to Pl.'s Mot. Ex. 4 ¶ 7.) As Ms. Perry elaborates:

> Veolia's contract provided ADA complementary paratransit service only to riders whose disabilities impacted their mobility to the point that they were unable to utilize the fixed route (bus stop) service. This program was funded through the City of Detroit's general fund. On the other hand, the TPP program was intended to serve (1) the elderly; (2) lower income persons; and (3) all disabled persons, not necessarily those whose disabilities were severe enough to prevent them from using the fixed route system. The TPP was a federally funded program . . .

(*Id.*) Nevertheless, once TPP services became available, Veolia lost approximately fifteen percent (15%) of its paratransit riders to TPP. (Pl.'s Mot. Ex. A ¶ 4.) Veolia alleges that some of these riders were directed to TPP after calling *Veolia's* call center staffed by Enjoi's employees. (*Id.* ¶ 5.) DDOT selected Enjoi as the TPP provider

effective October 1, 2008.  (*Id*. Ex. H.)

Returning to the dispute between Veolia and the City concerning the City Contract, Veolia continued to make threats to stop providing paratransit services during the first the first several months of 2009.  In response, on April 28, 2009, Ms. Perry sent an e-mail to Enjoi Vice President Gregory Lynn to determine if Enjoi had the capacity to assume Veolia's services as part of Ms. Perry's preparation of a "contingency plan in case ATC [Veolia] ever stop [sic] providing services."  (Def.'s Resp. to Pl.'s Mot. Exs. 4, 8.) According to Ms. Perry, she contacted Enjoi based on her familiarity with its performance as a contractor under TPP.  (*Id*. Ex. 4 ¶ 7.)  In a subsequent e-mail, Ms. Perry described the "contingency plan" to Mr. Lynn as follows:

> The goal of the contingency plan is to define the "Emergency" process required to pick-up tomorrow, if ATC bailed today.  As a contingency, it's most likely that we'll never execute it, but if ever needed, our only goal is ensuring that all trips are provided. . . .
> . . .
> Right now, I'm working to identify Enjoi as the "Emergency" Contin[g]ency Provider.  This means, we'll revise your TPP scope of service, so that it includes the ability for you to assume these responsibilities, permits you take control of the funds allocated for this service, and places you at the top of the list for fulfilling this role in the interim, while the bidding process takes place.
>
> No matter what . . . we MUST meet 100% of the demand ALWAYS.  To this point . . . please know that you will be required to subcontract some of these services to other providers, while vehicles and staffing are put in place.  This means, you'll be required to establish these contract[s] up front and DDOT will make sure trips are assigned in a manner that guarantees the demand is met. . . .

(Def.'s Resp. to Pl.'s Mot. Ex. 8.)  Mr. Lynn responded to Ms. Perry's e-mail, providing

information to show that Enjoi was capable of assuming Veolia's services in an emergency.  (*Id*. Ex. 8.)  Around August 2009, Enjoi also engaged in discussions with subcontractors, such as Checker Cab, so Enjoi could meet the demands of the paratransit service.  (Pl.'s Mot. Ex K.)

By this point, the City owed Veolia a large balance for paratransit services and Veolia had sent letters to the City indicating that it would be forced to pursue legal remedies and possibly suspend its service if the City's payment was not forthcoming. (Def.'s Resp. to Pl.'s Mot. Exs. 9, 10.)  On October 6, 2009, Veolia sent Enjoi a letter apprising Enjoi of the situation:

> The City of Detroit is seriously deficient in its payments to Veolia.  Veolia has taken every reasonable step to obtain payment from the City but without success.  Veolia's only remaining remedy is to advise the City that service will be suspended if payment is not forthcoming.  The City has been advised that service will be suspended at midnight October 12, 2009 unless the City pays its outstanding balance or comes to an agreement with Veolia as to the disposition of the balance and future payment arrangements.
>
> In the hope that the City will meet its commitments to Veolia, we will maintain full readiness to resume services upon receipt of payment. . . . The subcontract between Veolia and Enjoi for the operation of the call center requires monthly advance payments and Veolia has made the October payment to Enjoi.  Enjoi is directed to fully staff the call center through the month of October. . . .

(*Id*. Ex. 11.)  Contrary to Veolia's instructions, Enjoi sent Veolia a letter on October 9, 2009, indicating that it would be laying off three call center employees, effective that day, "due to the uncertainty of the contract status between Veolia and DDOT."  (*Id*. Ex. 12.) According to Mr. Lynn, Enjoi in fact did not lay-off these employees; rather, he only

intended to lay-off these individuals if Veolia failed to make a $3,876.40 payment to Enjoi that was due the following day.  (*Id*.; Ex. 19 at 62-63.)

Also on October 9, 2009, an Enjoi employee working in the call center for Veolia's paratransit services disrupted the phone system.  According to Larry Worthy, Veolia's Quality Assurance Manager responsible for overseeing the call center at that time, the City contacted Veolia on October 9 to indicate that the City had discovered problems with the call center's phone system.  (Pl.'s Mot. Ex. O ¶¶ 1, 5.)  When no technical problems with Veolia's phone system were found, Mr. Worthy investigated further by reviewing call logs and recorded phone conversations.  (*Id*. ¶ 5.)  Mr. Worthy discovered that an Enjoi employee working at the call center was repeatedly hanging up on calls and cycling them back to the phone que.  (*Id*.)  Reviewing the phone records, Mr. Worthy also discovered that former call center personnel were calling in and soliciting current call center employees to stop working with Veolia and instead report to a new call center established to arrange services from Enjoi. (*Id*. ¶ 6.)

Veolia claims that this conduct by Enjoi and Enjoi's employees "push[ed] the relationship between the City and Veolia past the breaking point . . ."  (Pl.'s Mot. at 4.) Claiming that "Enjoi had irreparably injured Veolia's relationship with the City" (*id*. at 5), Veolia terminated the Enjoi Contract on October 14, 2009, and suspended its provision of paratransit services under the City Contract on November 6, 2009.  (*Id*. Exs. Q, R.)

In a letter to Enjoi, dated October 14, 2009, Veolia states that it is terminating the

contract for default and identifies the following as examples of Enjoi's wrongdoing:

> •On October 6, 2009, Veolia directed Enjoi to fully staff the call center through the end of October. Thereafter, Enjoi disregarded Veolia's directive and unilaterally instituted a layoff of call center personnel.

> •Enjoi has actively sabotaged call center operations, such as by deliberately answering and redirecting calls back into the phone queue and/or hanging up on clients to make it appear as if Veolia is experiencing technical issues with its phone system.

> •With Ms. Latrinda Perry of the DDOT, Enjoi has sought to divert to itself, and has so diverted, paratransit transportation services that Veolia is entitled to perform under its contract with the City of Detroit . . .

(*Id*. Ex. Q.) In a letter to the City, dated November 6, 2009, Veolia states that the City is in breach of the City Contract due to, among other reasons, the City's failure to pay Veolia more than $5.4 million owed, its operation of "an alternative call center for receipt and processing of paratransit telephone calls while physically disconnecting Veolia's access to such calls," and the City's "deliberate and persistent course of conduct to transfer paratransit services from Veolia to unqualified low-cost providers" from late 2008 throughout 2009. (*Id*. Ex. R.)

Shortly thereafter, on October 21, 2009, Veolia initiated this lawsuit against Enjoi. Veolia filed an amended complaint on October 29 alleging, as set forth earlier, the following claims: (I) breach of the Enjoi Contract; (II) tortious interference with the City Contract; and (III) civil conspiracy to tortiously interfere with the City Contract. Enjoi filed its motion for summary judgment on May 12, 2010. Veolia filed its motion for partial summary judgment with respect to its breach of contract claim on June 30, 2010.

In its motion, Enjoi informs the Court that Veolia filed a separate lawsuit against the City on November 5, 2009, which has been assigned to the Honorable Victoria Roberts. *Veolia Trans. Services, Inc. v. Detroit*, No. 09-14367.

## III.    The Parties' Arguments

Enjoi raises several argument in support of its motion for summary judgment with respect to Veolia's claims.  First, Enjoi argues that the City Contract and therefore the Enjoi Contract are illegal and void because Veolia failed to obtain a Certificate of Authority as required under Michigan's Limousine Transportation Act ("Limousine Act") and/or Motor Bus Transportation Act ("Motor Bus Act").  Second, Enjoi contends that the City Contract and therefore the Enjoi Contract are void as against public policy based on Veolia's failure to obtain a Certificate of Authority under these statutes.  Enjoi next argues that the Enjoi Contract's non-compete clause did not preclude Enjoi from providing transportation services for the City and was waived as to Enjoi's provision of call center services.  Finally, Enjoi argues that the Enjoi Contract's no-contact provision is unenforceable because it is unreasonable and ambiguous.

In response, Veolia asserts two reasons why it was not required to obtain a Certificate of Authority under the Limousine Act and Motor Bus Act.  First, Veolia contends that it is exempt from the requirement because the City is exempt and Veolia provided paratransit services as the City's agent.  Veolia also argues that it did not meet the definition of a "carrier of passengers" to which both acts apply.  Veolia further argues in response to Enjoi's motion that the no-contact and non-compete provisions in the Enjoi

Contract are enforceable, unambiguous, and were not waived.

In its motion, Veolia seeks summary judgment with respect to its claim that Enjoi breached the no-contact provision in the Enjoi Contract. According to Veolia, there is no genuine issue of material fact that Enjoi engaged in discussions with the City beginning April 2009– during the term of the Enjoi Contract– with respect to Enjoi's assumption of paratransit services for the City in Veolia's place. Veolia argues that such contact violates this provision.[3]

Enjoi raises four arguments in response to Veolia's partial summary judgment motion. First Enjoi contends that the Enjoi Contract is illegal and void, relying on the arguments asserted in its summary judgment motion. Next, Enjoi responds that it did not breach the contract's no-contact clause because the City contacted Enjoi (not the other way around) and because, by the time that occurred, Veolia already had damaged its relationship with the City by threatening to stop providing paratransit services. Enjoi argues that clauses like the no-contact clause in the Enjoi Contract only are enforceable to protect legitimate business interests but Veolia lacked such an interest by the time the City contacted Enjoi in response to Veolia's threats. Third, Enjoi maintains that it is against public policy to enforce the no-contact clause under the circumstances– where the

---

[3]Notably, as set forth *infra*, the no-contact provision also prohibits Enjoi from "permit[ting] or caus[ing] to be permitted any work slowdowns or stoppage by the contracted personnel." (Def.'s Mot. Ex. 7 ¶ 3.K.) Veolia alleges that Enjoi breached this portion of the provision when its personnel sabotaged the call center in October 2009. (*See* Am. Compl. ¶¶ 19-20). Veolia, however, does not appear to be relying on this conduct to support its summary judgment motion. (*See* Pl.'s Mot. at 4.)

City contacted Enjoi to provide emergency transportation for disabled citizens as required by the ADA in the event Veolia terminated services as it threatened to do. Lastly, Enjoi argues that Veolia's breach of contract claim based on an alleged violation of the no-contact clause fails because Veolia cannot prove that Enjoi's actions caused Veolia damages. Specifically, Enjoi contends that Veolia caused its own damages when it quit performing services under the City Contract and walked off the job on November 6, 2009.

IV.  Analysis

A.  Whether the Enjoi Contract is illegal and/or void

As summarized above, Enjoi argues that the City Contract is illegal and/or void as against public policy because Veolia failed to obtain a Certificate of Authority under the Limousine Act and/or the Motor Bus Act and that therefore the Enjoi Contract also is illegal and/or void. In support of its argument, Enjoi cites numerous cases where courts have held that "'a contract which cannot be performed without violation of a statute is illegal and void.'" (Def.'s Mot. at 15 (quoting *Fed. Screw Works v. Interface Sys., Inc.*, 569 F. Supp. 1562, 1565 (E.D. Mich. 1983).) Pursuant to these cases, if Veolia was required under Michigan law to obtain a Certificate of Authority to provide paratransit services for the City, the City Contract arguably is illegal and void as against public policy.[4]

_____

[4]The Court finds it interesting that in Veolia's lawsuit against the City where Veolia alleges that the City breached the City Contract, the City, in its Answer to the Complaint, does not challenge the legality of the contract. In fact, the City "admits that it
(continued...)

13

While Veolia asserts several reasons for why it was exempt from the certification requirement of the Limousine Act and Motor Bus Act, the Court finds it unnecessary to interpret the statutes and make this determination. This is because Enjoi has not shown that the resolution of whether the *City Contract* was illegal or void due to Veolia's failure to obtain a Certificate of Authority bears upon Veolia's claims against Enjoi based upon the *Enjoi Contract*.[5]  Regardless of whether the City Contract is illegal and/or void, Enjoi has not cited one case suggesting that this renders the Enjoi Contract illegal and/or void.

The cases Enjoi cites, stand for the proposition that one cannot maintain an action to recover on a contract where one has agreed under the contract to perform services or furnish materials in violation of a statute which is enacted to protect the public health, morals, and safety.  *See, e.g., Silver v. A.O.C. Corp.*, 31 Mich. App. 147, 187 N.W.2d 532, 533-34 (1971) (holding that the plaintiff could not recover for electrical work performed for the defendant where the plaintiff was not licensed as an electrical

---

[4](...continued)
has a *valid* and *enforceable* contract with [Veolia]."  Answer [Doc. 7] ¶ 34, *Veolia v. Detroit*, No. 09-14367 (Nov. 27, 2009).

[5]In support of its argument that Veolia was required to obtain a Certificate of Authority, Enjoi filed a supplement brief in support of its motion for summary judgment offering the affidavit of Michigan Department of Transportation employee David O. Sucha.  (*See* Doc. 36.)  In his affidavit, Mr. Sucha states that Veolia never obtained a Certificate of Authority under either act but was required to do so.  (*Id*. Ex. 1 ¶¶ 4, 5.) Veolia has moved to strike Enjoi's supplemental brief, including Mr. Sucha's affidavit. Because the Court finds it unnecessary to resolve the issue of whether Veolia was required to obtain a certificate, it is denying as moot Veolia's motion to strike the pleading and affidavit.

contractor as required by Michigan law to perform the work).  While perhaps the Enjoi

Contract would not have arisen but for the City Contract, the Enjoi Contract itself could

be performed without violating Michigan law.  Pursuant to the Enjoi Contract, Enjoi

agreed to staff Veolia's call center and, in exchange, Veolia agreed to reimburse Enjoi for

the latter's payroll costs and to pay a fixed monthly fee of $6,333.33.  (Def.'s Mot. Ex. 7

¶¶ 3, 8.)  In other words, the parties' obligations under the Enjoi Contract did not require

either party to violate Michigan law.  As well, Veolia's breach of contract claim against

Enjoi is not dependent upon the City Contract.  In other words, neither the Court nor the

trier of fact needs to interpret or rely in any way on the City Contract to decide Veolia's

claims against Enjoi.  Thus, absent case law to the contrary (which Enjoi has not cited),

this Court cannot conclude that the Enjoi Contract is illegal and/or void because the City

Contract may be illegal and/or void.

**B. Whether the non-compete clause in the Enjoi Contract precluded Enjoi from providing transportation services to the City and was waived as to Enjoi's provision of call center services**

Veolia alleges that Enjoi breached the non-compete clause in the Enjoi Contract by providing paratransit services to the City and providing personnel to staff a non-Veolia call center. Enjoi seeks summary judgment with respect to this claim, contending that it did not breach the non-compete clause because the clause did not extend to transportation services and Veolia waived the clause with respect to Enjoi's provision of competitive call center services.[6]

By its terms, the Enjoi Contract is governed by Michigan law. (Def.'s Mot. Ex. F Att. II ¶ 18.) Pursuant to the decisions of the Michigan courts:

> [T]he proper interpretation of a contract is a question of law. . . . That contracts are enforced according to their terms is a corollary of the parties' liberty to contract. . . . The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself. Michigan courts examine contractual language and give the words their *plain and ordinary* meanings. . . . If the language of the contract is unambiguous, the court construes and enforces the contract as written. . . . If the contract language is ambiguous, testimony may be taken to explain the ambiguity. . . . Only when contract language is ambiguous does its meaning become a question of fact. . . .
>
> A contract is ambiguous if its words may *reasonably* be understood in different ways. . . . In other words, a contract is ambiguous when its provisions are capable of conflicting interpretations. . . . Courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare ambiguity. . . . Instead, contracts must construed so as to give effect to every word or phrase as far as practicable. . . . However,

---

[6]Veolia's partial summary judgment motion does not address its breach of contract claim based on the non-compete clause, only the no-contact clause.

courts may not impose an ambiguity on clear contract language.

*Certified Restoration Dry Cleaning Network LLC v. Tenke Corp.*, 511 F.3d 535, 543-44 (6th Cir. 2007) (internal quotation marks and citations omitted) (emphasis in original).

The Enjoi Contract's non-compete clause prohibits Enjoi from "provid[ing] personnel *of the types to be furnished hereunder*" to any entity "*providing paratransit* or other services *of the types being provided to DDOT by ATC [Veolia] under the DDOT Contract.*"  (Def.'s Mot. Ex. 7 ¶ 11 (emphasis added).)  Applying the rules of contract construction set forth in the preceding paragraph to this language, the Court finds that it unambiguously prohibits Enjoi only from providing call center personnel to an entity (1) providing paratransit services or (2) other services Veolia was required to provide the City under the City Contract.  While the Enjoi Contract defines its purpose to include "assist[ance] in the delivery of accessible, cost effective, public transportation to persons certified as eligible . . ." (Def.'s Mot. Ex. 7 ¶ 1), the only "types" of personnel Enjoi was obligated to furnish under the contract was employees to "staff[] and operat[] the customer service call center associated with the provision of said services."  (*Id*. ¶ 3.)  In other words, the non-compete clause by its plain and unambiguous terms did not prohibit Enjoi from competing with Veolia to provide paratransit services for the City.  Thus the Court agrees with Enjoi that it is entitled to summary judgment with respect to Veolia's claim that Enjoi breached the contract by providing competing paratransit services to the City.

Enjoi did provide personnel for a competitive call center during the term of the

Enjoi Contract. Enjoi only is entitled to summary judgment with respect to Veolia's breach of contract claim based on this conduct if, as Enjoi claims, Veolia waived the non-compete clause with respect this conduct. To demonstrate that Veolia did, Enjoi relies on a letter of recommendation that Veolia provided to Enjoi. (Def.'s Mot. Ex. 20.) This letter, addressed to "To Whom It May Concern" and dated February 9, 2006, states in relevant part: "Although the relationship [between] Enjoi Transportation and Connex/ATC is relatively new, we highly recommend them to your firm as a provider of Call Center services." (*Id.*) It was signed by Connex/ATC's General Manager, Carl Woodson. (*Id.*).

The Michigan Supreme Court has held "that parties to a contract are free to *mutually* waive or modify their contract notwithstanding a written modification or anti-waiver clause because of the freedom to contract." *Quality Products v. Nagel Precision, Inc.*, 469 Mich. 362, 364, 666 N.W.2d 251, 253 (2003) (emphasis in original). Stated differently, "an original contract's written modification or anti-waiver clauses do not serve as barriers to subsequent modification by express mutual agreement . . ." *Id*. at 258, 666 N.W.2d at 258. "[M]utuality is the centerpiece to waiving or modifying a contract . . ." *Id*. at 364, 666 N.W.2d at 253.

"The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id*. at 373, 666 N.W.2d at 258. "[A] waiver is a voluntary and intentional

18

abandonment of a known right." *Id.* at 374, 666 N.W.2d at 258 (citations omitted). The

party claiming that there has been a modification or amendment "must establish that the

parties mutually intended to modify the *particular* original contract, including its

restrictive amendment clauses such as written modification or anti-waiver clauses. *Id.* at

373, 666 N.W.2d at 258 (emphasis in original).

Mr. Woodson's recommendation letter does not, as a matter of law, provide clear

and convincing evidence of Veolia's waiver of the Enjoi Contract's non-compete

provision. First, by its plain and ordinary terms, the letter itself does not expressly waive

the contract's restriction on Enjoi's ability to provide call center personnel to competing

paratransit providers or an entity providing "other services *of the types being provided to*

*DDOT.*" (*See* Def.'s Mot. Ex. 20 (emphasis added).) Second, and related, it is not clear

from the letter or any other evidence whether Mr. Woodson supplied the letter intending

or knowing that Enjoi planned to use it to secure a contract for the provision of call center

personnel for an entity "providing paratransit or other services of the types being

provided to DDOT."[7] Finally, the Enjoi Contract contains a waiver clause stating that

Veolia's failure to insist in any one or more instances upon performance of any of the

_____

[7]Citing Mr. Lynn's deposition transcript, Veolia contends that the recommendation
letter was sought for an airport shuttle contract or a Medicaid contract, not as an effort to
provide paratransit services. (Pl.'s Resp. at 19.) Veolia, however, has not attached Mr.
Lynn's deposition transcript to its response brief and the portions of the transcript
attached to other pleadings do not appear to contain the testimony to which Veolia cites.
Notably, it is not the Court's duty to search the record for evidence to support Veolia's
factual assertions. Moreover, Veolia has not even identified the specific page(s) in the
transcript to which it is citing.

terms and conditions of the contract "shall not be construed as a waiver of relinquishment of [Veolia's] rights (a) to require strict performance of [Enjoi's] obligations or (b) to require the future performance of any terms and conditions, but [Enjoi's] obligations with respect to such performance shall continue in full force and effect." (Def.'s Mot. Ex. 7 Att. II ¶ 22.) Mr. Woodson's letter in no way reflects Veolia's intent to waive this anti-waiver clause. *See Quality Products*, 469 Mich. at 373, 666 N.W.2d at 258.

In short, the Court cannot conclude that Veolia waived the non-compete clause of the Enjoi Contract with respect to Enjoi's provision of call center personnel for an entity performing paratransit services. Enjoi therefore is not entitled to summary judgment with respect to Veolia's breach of contract claim based on this conduct.

### C. Whether Enjoi breached the no-contact provision of the Enjoi Contract

Both parties seek summary judgment with respect to Veolia's claim that Enjoi breached the no-contact provision in the Enjoi Contract when Enjoi engaged in discussions with DDOT to assume Veolia's paratransit services. Veolia argues that the provision is unambiguous and Enjoi breached it. Enjoi argues that the provision is unenforceable because it is "ambiguous and unreasonable." Enjoi further argues that Veolia cannot establish that any breach by Enjoi proximately caused any damages to Veolia.

Again, the no-contact provision provides in full:

Contractor [Enjoi] shall have no contact with DDOT, the Local Advisory Council, the Task Force on Disabilities and other local transit related entities *in connection with the DDOT Contract* unless instructed by ATC;

20

> shall not make any negative comments to the third parties concerning the
> Contract, DDOT or ATC; and shall not permit or cause to be permitted any
> work slowdowns or stoppage by the contracted personnel.

(Def.'s Mot. Ex. 7 ¶ 3.K.)  Enjoi contends that this provision is rendered ambiguous because it "directly contradicts the [City] contract which provides 'DDOT shall have full access to all aspects of the system and operations.'"  (Def.'s Mot. at 19-20 (quoting Ex. 3 ¶ 12).)  The Court disagrees.  First, the Court does not find the language of the City Contract and Enjoi Contract at odds.  Second, this Court cannot look to a separate, unincorporated contract between different parties (or even the same parties) to render ambiguous the terms of an otherwise unambiguous contract.

Enjoi also argues in support of its summary judgment motion and in response to Veolia's motion that it did not violate the no-contact provision because the communications between DDOT and Enjoi were initiated by DDOT.  The Court finds no merit to Enjoi's argument.  Nothing in the no-contact provision suggests that it is dependent on who initiates the contact.

Also lacking merit is Enjoi's argument in response to Veolia's motion that the no-contact provision is void as against public policy because, Enjoi contends, it prohibits the City from securing an alternative provider of paratransit services in the event Veolia acted on its threats to stop providing such services.  Enjoi makes the argument that "[i]t is clear that . . . Veolia intended to hold the City hostage to the disadvantage of disabled citizens by threatening to suspend services if they didn't get paid their money."  (Def.'s Resp. at 10.)  Enjoi argues that, under these circumstances, enforcing the no-contact provision to

prohibit the City from communicating with Enjoi to find a capable alternate transportation

provider is "cruel, shocking, socially unjust, and against the consciousness and conviction

for what is right." (*Id.*)

The Michigan Supreme Court has set forth the following test for assessing whether

a contractual provision is against public policy and therefore void under Michigan law:

> . . . all agreements the purpose of which is to create a situation which tends
> to operate to the detriment of the public interest are against public policy
> and void, whether in the particular case the purpose of the agreement is or is
> not effectuated. . . .
> . . .
> The test to be applied is not what is actually done, but that which may or
> might be done under the terms of the contract; it is the evil tendency of the
> contract and not its actual injury to the public in a particular instance. The
> law looks to the general tendency of such agreements, and it closes the door
> to temptation by refusing them recognition in any of its courts.

*Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 260 (6th Cir. 1988) (emphasis

removed) (quoting *Mahoney v. Lincoln Brick Co.*, 304 Mich. 694, 705-07, 8 N.W.2d 883,

887-88 (1943)). More recently, the Court provided guidance in assessing what constitutes

public policy:

> In identifying the boundaries of public policy . . . the focus of the judiciary
> must ultimately be upon the policies that, in fact, have been adopted by the
> public through our various legal processes, and are reflected in our state and
> federal constitutions, our statutes, and the common law.
>
> . . . Such a policy must ultimately be rooted in the law. There is no other
> proper means of ascertaining what constitutes our public policy.

*Terrien v. Zwit*, 467 Mich. 56, 66-67, 648 N.W.2d 602, 608 (2002). The *Terrien* Court

also warned that "[t]he principle that contracts in contravention of public policy are not

enforceable should be applied with caution . . ." *Id*. at 66 n.9, 648 N.W.2d at 608 n.9.

There are several reasons why this Court heeds the Michigan Supreme Court's caution and declines to find the Enjoi Contract's no-contact provision void as against public policy.

First, the terms of the no-contact provision do not suggest an "evil tendency" or "a purpose of which is to create a situation which tends to operate to the detriment of the public interest." Rather, the purpose of the provision appears simply to have been to prevent Enjoi from usurping Veolia's business or damaging its reputation. As Enjoi indicates in its brief, citing *Bristol Window & Door v. Hoogenstyn*: "'[A] restrictive covenant will be held valid if it 'appears to have been for a *just and honest purpose*, for the protection of the *legitimate interests* of the party in whose favor it is imposed, reasonable as between them and not *specifically injurious to the public*.'" (Def.'s Resp. to Pl.'s Mot. at 9 (quoting 250 Mich. App. 478, 487, 650 N.W.2d 670, 675 (2002).)

Importantly, the no-contact provision does not prohibit *the City* from contacting *any* entity to provide paratransit services in the event Veolia stopping doing so. Arguably, the provision only prohibits Enjoi from communicating with the City with respect to Enjoi becoming that back-up provider. While this may operate to Enjoi's detriment, it cannot be said that it necessarily is detrimental to the public interest. Second, Enjoi fails to identify any public policy set forth in the Michigan or Federal Constitution, statutes, or other common law that might be harmed if the no-contract provision is enforced.

Lastly, Enjoi argues that Veolia is not entitled to partial summary judgment with respect to Veolia's claim based on an alleged breach of the no-contact provision because (1) Veolia cannot establish that Enjoi's conduct proximately caused Veolia's damages and (2) Veolia cannot establish damages. Enjoi argues that the proximate cause of Veolia's inability to provide paratransit services for the City was Veolia's own conduct when it threatened and eventually stopped performing services under the City Contract on November 6, 2009 in response to an unresolved billing dispute between the City and Veolia.[8] Veolia contends in response that, well before November 6, 2009, its ability to provide paratransit services pursuant to the City Contract was sabotaged by Enjoi and the City when the City dictated that all further calls for paratransit services would be routed through an alternative call center staffed by Enjoi personnel for services provided by Enjoi. (*See* Pl.'s Resp. to Def.'s Mot. Exs. S, U.)

With respect to this element of Veolia's breach of contract claim, the Court finds a genuine issue of material fact precluding summary judgment in Veolia's favor. The Court cannot conclude, as a matter of law, whether or not Enjoi's conduct proximately caused a deterioration in Veolia's relationship with the City or its loss of the City Contract.

For these reasons, the Court rejects both parties' arguments in support of their

---

[8]Enjoi also argues that Veolia cannot establish damages because Veolia terminated its services when it walked off the job and the City Contract expressly required Veolia to continue performance under the contract while matters in dispute were being resolved. (Def.'s Resp. to Pl.'s Mot. at 11.) The Court cannot make sense of this argument.

request for summary judgment with respect to Veolia's breach of contract claim premised on the no-contact provision.

## V.     Conclusion

Based on the Court's analysis, the Court concludes that Veolia is not entitled to summary judgment with respect to its claim that Enjoi breached the no-contact provision of the Enjoi Contract.  Additionally, the Court concludes that Enjoi is not entitled to summary judgment with respect to Veolia's amended complaint except to the extent that Veolia claims that Enjoi breached the non-compete clause of the Enjoi Contract by providing paratransit services for the City.

Accordingly,

**IT IS ORDERED**, that Plaintiff Veolia Transportation, Inc.'s motion for partial summary judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant Enjoi Transportation, LLC's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:
John D. Pirich, Esq.
Sean F. Crotty, Esq.
Nikki R. Wright, Esq.